NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 25-1393
_____

SCOTT LYKENS,
                              Appellant

v.

COLETTE S. PETERS; JAMES PETRUCCI;
STEPHEN SPAULING; JANE DOES 1-20

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 4:24-cv-01385)
District Judge:  Honorable Joseph F. Saporito, Jr.

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 14, 2025

Before:  SHWARTZ, MONTGOMERY-REEVES, and SCIRICA, <u>Circuit Judges</u>

(Opinion filed: October 17, 2025)
_____

OPINION[*]
_____

PER CURIAM

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Scott Lykens appeals *pro se* from the District Court's order dismissing his complaint for lack of subject-matter jurisdiction. We will affirm.

I.

Lykens pled guilty to federal tax crimes and was sentenced to 15 months' imprisonment in April 2022. He surrendered himself to the custody of the United States Bureau of Prisons ("BOP") a few weeks later, and he was released from prison in March 2023. Lykens initiated this matter in July 2024 by filing a complaint in the Court of Common Pleas of Centre County, Pennsylvania. He alleged that three named and other unnamed BOP officials deliberately miscalculated the time credits he should have been entitled to under the First Step Act, thereby wrongfully imprisoning him for 45 days beyond his expected release date in violation of Pennsylvania law. For each of those days, Lykens brought one count of false imprisonment and sought damages in excess of $500,000 (or $22.5 million in total).

The United States, anticipating that it would be substituted for the BOP defendants pursuant to the Federal Employees Liability Reform and Tort Compensation Act of 1988 ("the Westfall Act"), 28 U.S.C. § 2671 *et seq.*, entered its appearance and removed the case to the United States District Court for the Middle District of Pennsylvania on August 16, 2024, under the general removal statute, 28 U.S.C. § 1441. Lykens moved to remand the case to state court one week later, arguing, *inter alia*, that the government lacked standing to remove because it was not a party. The Middle District's United States Attorney's Office subsequently certified that the BOP defendants were acting

2

within the scope of their employment at the time of the events from which Lykens' common-law tort claims stem.[1] The government then filed a motion to dismiss the complaint on several grounds, only one of which is relevant here. Because sovereign immunity shields the United States and its employees from liability, the government asserted that the exclusive remedy for Lykens' claims is the limited waiver of immunity contained within Section 2674 of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.* The FTCA, however, obliges plaintiffs to exhaust administrative remedies before filing suit. See id. § 2675(a). As Lykens had never presented his claims to the BOP, the government contended that the District Court lacked subject-matter jurisdiction to adjudicate them.

Lykens did not meaningfully respond to the government's exhaustion argument. Instead, he disputed that the BOP defendants were acting within the scope of their employment. In his view, the BOP defendants failed to comply with mandatory

---

[1] Federal regulations authorize the Attorney General to delegate his or her certification authority to United States Attorneys. See 28 C.F.R. § 15.3. In this case, the former United States Attorney for the Middle District of Pennsylvania further delegated such authority to the chief of his Office's civil division, who issued the scope-of-employment certification in question. Per the Westfall Act, "[u]pon" such certification, the pending "action or proceeding shall be deemed to be an action or proceeding brought against the United States . . ., and the United States shall be substituted as the party defendant." 28 U.S.C. § 2679(d)(1), (2). Notwithstanding the Act's seemingly mandatory language, this Court and the United States Supreme Court have long recognized that substitution is not automatic and that certifications are subject to challenge and judicial review. See De Martinez v. Lamagno, 515 U.S. 417, 432-34 & n.9 (1995); Schrob v. Catterson, 967 F.2d 929, 934-36 (3d Cir. 1992) (citing, *inter alia*, Melo v. Hafer, 912 F.2d 628, 642 (3d Cir. 1990)).

3

provisions of the First Step Act and unambiguous Bureau policy concerning the application of time credits and "then violated state and federal criminal law in an effort to cover up their failures." See ECF Doc. 12 at 1-4. Lykens requested limited discovery of a few specific items: his inmate file; revisions to a spreadsheet used to track time credits; "potentially sensitive" materials used to implement a computer program for automatically calculating credits; and electronic communications invoking his name, the First Step Act, or variations on the phrase "time credits." See id. at 4-5. He also asked to depose each defendant for up to two hours.

The parties' motions were referred to the Honorable Daryl F. Bloom, the Middle District's Chief United States Magistrate Judge, who prepared a report recommending that the District Court grant the government's motion to dismiss for want of jurisdiction and dismiss Lykens' motion as moot. Among Judge Bloom's conclusions was that "the certification filed by the United States operates as *prima facie* evidence that the defendants were acting within the scope of their employment," and that "Lykens has not controverted the certification." See ECF Doc. 14 at 12-13. The District Court partially adopted the report over Lykens' objections and dismissed the case without prejudice.[2] The court agreed that Lykens' failure to first present to the BOP "an administrative tort

---

[2] The District Court declined to adopt Judge Bloom's recommendation to dismiss Lykens' remand motion as moot, instead finding his challenge to the government's substitution meritless under the FTCA.

claim of any sort" precluded its exercise of jurisdiction.  See ECF Doc. 18 at 18-21.[3]  The court then summarily adopted the portion of the report addressing the disputed certification.  Lykens appeals.

## II.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.  We exercise plenary review of District Court orders denying motions to remand and dismissing complaints for lack of subject-matter jurisdiction, and we review findings of fact for clear error.  See Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Acct., 618 F.3d 277, 287 (3d Cir. 2010), *as amended* (Dec. 7, 2010); White-Squire v. U.S. Postal Serv., 592 F.3d 453, 456 (3d Cir. 2010) (citing CNA v. United States, 535 F.3d 132, 139 (3d Cir. 2008)).  "Our standard of review of questions concerning the scope or opportunity for discovery is for abuse of discretion."  Brumfield v. Sanders, 232 F.3d 376, 380 (3d Cir. 2000) (citing Country Floors Inc. v. Gepner & Ford, 930 F.2d 1056, 1062 (3d Cir. 1992)).

## III.

Lykens does not address exhaustion on appeal.  He asserts that the District Court committed reversible error in three respects: *first*, by not rejecting the United States'

---

[3] In reaching its conclusion, the District Court noted that Lykens had failed to address the government's exhaustion arguments.  Lykens' only discussion of the issue, which he offered in his reply brief in support of his objections, was to inform the court that he had filed a claim with the BOP in late November 2024—five months after filing suit.  The court found this belated act insufficient to cure the jurisdictional defect.

notice of removal *sua sponte* for lack of standing to remove the action to federal court; *second*, by not finding removal to be untimely beyond the 30-day period set forth in 28 U.S.C. § 1446(b) and then remanding; and *third*, by uncritically accepting the government's scope-of-employment certification. We address each in turn.

Lykens' contention that the United States put the cart before the horse in removing the case on the BOP defendants' behalf before filing its notice of substitution is well-taken. But it is well-settled that a District Court's "error in failing to remand a case improperly removed is not fatal to the ensuing adjudication if federal jurisdictional requirements are met at the time judgment is entered." See Caterpillar Inc. v. Lewis, 519 U.S. 61, 64 (1996). Whatever statutory or representational defect existed at the time of removal in this case, it was cured when the United States formally requested substitution, which, "[f]or purposes of establishing a forum to adjudicate the case," is "dispositive." See Osborn v. Haley, 549 U.S. 225, 242 (2007) (citing 28 U.S.C. § 2679(d)(2)). As the government effected its cure long before final judgment was entered—and, indeed, before briefing on Lykens' motion to remand had even concluded—the District Court did not err in retaining jurisdiction.

The plain language of the Westfall Act also forecloses Lykens' second argument. While the general removal statute obliges a defendant to file a notice of removal within 30 days after receiving a copy of the initial pleading or service of the summons, as appropriate, see 28 U.S.C. § 1446(b), the Westfall Act provides that civil actions covered by an Attorney General's certification "shall be removed . . . *at any time before trial*," see

6

28 U.S.C. § 2679(d)(2) (emphasis added). Trial had not commenced in this case by the time the government filed its notice of substitution under the Westfall Act.

Lykens' third argument fares no better than his first two. "Ordinarily, scope-of-employment certifications occasion no contest." De Martinez, 515 U.S. at 421. That may explain why they "customar[ily] state[] no reasons for the . . . determination." See id. Here, though, "substitution of the United States would cause demise of the action" if Lykens in fact failed to exhaust administrative remedies before filing suit because a proper certification would "disarm" him completely. See id. at 422, 427. The Supreme Court was cognizant of that consequence when it held that the bare fact of certification "does not conclusively establish as correct the substitution of the United States as defendant in place of the employee." See id. at 434. Where the propriety of the certification is in question, judicial review is essential.

We summarized the steps that District Courts should take when confronted with contested certifications more than three decades ago in Melo v. Hafer, 13 F.3d 736 (3d Cir. 1994) ("Melo II"). The court should begin by reviewing "[t]he Attorney General's certification" to determine whether it "state[s] the basis for his or her conclusion." See id. at 747 (emphasis added).[4] If it does, the certification "will focus the subsequent proceedings on the motion for substitution and . . . can be given the *prima facie* effect in

---

[4] We anticipated, for instance, that some certifications would address "cases in which the plaintiff alleges conduct which is beyond the scope of the defendant's employment, but which the Attorney General determines did not occur." See Melo II, 13 F.3d at 747.

7

those proceedings that Congress intended it to have." Id. When a certification "is based on a different understanding of the facts than is reflected in the complaint," we instructed that "the plaintiff should be permitted reasonable discovery and should then be called upon to come forward . . . with competent evidence supporting the facts upon which he would predicate liability, as well as any other facts necessary to support a conclusion that the defendant acted beyond the scope of his employment." Id. at 747. In the event the plaintiff "fails to tender such evidence," the Westfall Act "requires that substitution be ordered." Id. If, on the other hand, limited discovery produces "competent evidence that would permit a conclusion contrary to that found in the certification," the government and the defendants, "after discovery if desired," would be "entitled to an evidentiary hearing at which both sides will tender their evidence on all disputes material to the scope of employment issue." Id. At that point, the District Court would do what District Courts do best: "resolve all issues of fact or law relevant" to the scope-of-employment question and make a finding one way or another. See id. at 747-48.

Adhering to custom, the government's certification in this case comprises just two sentences. The first sentence identifies the author, who notes the statutory and regulatory authorities by which decision-making power under the Westfall Act has been delegated to him and certifies that he has read Lykens' complaint. The second states that, "[o]n the basis of the information now available with respect to the allegations therein, I find that the individual defendants . . . were acting within the scope of their employment as employees of the United States at the time of the conduct alleged in the Complaint." See

8

ECF Doc. 7-1. Lykens asserts that the District Court erred in imbuing this statement with the rebuttable presumption of truth and for failing to permit limited discovery to probe its accuracy. In response, the government echoes Judge Bloom's analysis that "Lykens fails to offer 'specific facts' to show that the certification was incorrect or 'based on a different understanding of the facts than is reflected in the complaint.'" C.A. Doc. 16 at 13 (quoting Melo II, 13 F.3d at 747). The government has the better argument.

The instant certification varies only slightly from the one we considered in Brumfield. In affirming the order denying limited discovery on a scope issue in that case, we remarked that the Attorney General's certification "appears to have been based on the plaintiff's complaint" given her statement that she read the pleadings and reached her opinion "upon the basis of the information now available to [her] with respect to the incidents referred to therein." See Brumfield, 232 F.3d at 380 (citation omitted). There, as here, the plaintiff did not contend that the certification turned upon a misunderstanding of the complaint's allegations, which is the key the unlocking limited discovery. See Melo II, 13 F.3d at 747.

Lykens believes that discovery is likely to produce evidence that the BOP defendants "knowingly and willfully" broke the law by lying to Congress and falsifying official documents. See C.A. Doc. 7 at 9-10. Even if that were true, it would not undermine the government's certification that the named defendants were acting within the scope of their employment at the time of the events alleged. What matters for purposes of determining the scope of one's employment under Pennsylvania law is

9

whether the conduct at issue (a) "is of the kind [the employee] is employed to perform"; (b) "occurs substantially within the authorized time and space limits"; and (c) "is actuated, at least in part, by a purpose to serve the master." See McGuire *ex rel.* Neidig v. City of Pittsburgh, 285 A.3d 887, 892 (Pa. 2022) (quoting RESTATEMENT (SECOND) OF AGENCY § 228 (1958)). Thus, "even unauthorized acts"—including "intentional or criminal" conduct—"may be within the scope of employment 'if they are clearly incidental to the [employer's] business.'" See Brumfield, 232 F.3d at 381 (quoting Butler v. Flo-Ron Vending Co., 557 A.2d 730, 736 (Pa. Super. Ct. 1989); Shuman Estate v. Weber, 419 A.2d 169, 173 (Pa. Super. Ct. 1980)).

Judge Bloom accurately explained the foregoing precepts in his report and applied them to Lykens' allegations. The "specific facts" Lykens set forth in his complaint fall well short of rebutting the government's certification. See Schrob, 967 F.2d at 936. Assuming, *arguendo*, the BOP defendants testified falsely or fabricated documents with respect to their obligations under the First Step Act, such conduct still would have fallen within the scope of their employment with the Bureau. The same is true of Lykens' other averments, all of which center on the calculation of time credits. The District Court did not err in adopting Judge Bloom's report in this regard.

All that remains is exhaustion. "The FTCA precludes suit against the United States unless the claimant has first presented the claim to the relevant Federal agency and the claim has been finally denied." Lightfoot v. United States, 564 F.3d 625, 626 (3d Cir. 2009); see 28 U.S.C. § 2675(a). "The final denial requirement is 'jurisdictional and

10

cannot be waived.'" Lightfoot, 564 F.3d at 627; accord Roma v. United States, 344 F.3d 352, 362 (3d Cir. 2003). Lykens' failure to present his claim to the Bureau of Prisons before filing suit is undisputed, and his overdue filing with the agency, the status of which is unclear, cannot remedy his mistake *post hoc* in these proceedings.

Accordingly, we will affirm the judgment of the District Court.